IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| VALERIE LANGHIRT, et al., | : | Case No. 1:23-cv-441 |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| v. | : | |
| AUTO-OWNERS INSURANCE COMPANY, | : | |
| Defendant. | : | |

---

**ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (Doc. 25)**

---

This matter is before the Court on Defendant's Motion for Partial Summary Judgment on Plaintiffs' Claim of Bad Faith (Doc. 25). Plaintiffs filed a Response in Opposition (Doc. 37), to which Defendant filed a Reply in Support (Doc. 39). Lastly, Plaintiffs filed a sur-reply (Doc. 41). Thus, this matter is ripe for review. For the following reasons, Defendant's Motion for Partial Summary Judgment (Doc. 25) is **GRANTED**.

## FACTS

Plaintiffs Valerie and Alan Langhirt reside at a home in Marysville, Ohio ("Subject Property"). (Valerie Langhirt Dep., Doc. 38-1, Pg. ID 562.) Plaintiffs maintained a homeowners' insurance policy ("Policy") with Defendant Auto-Owners Mutual Insurance Company. (Flanigan Aff., Doc. 25-1, ¶4.) On March 25, 2023, a windstorm damaged the Subject Property. (*Id.* at ¶2.) Two days later, Plaintiffs notified Defendant about the damage to the Subject Property. (*Id.* at ¶3.) The initial loss notice described the

loss to the Subject Property as follows: "Shingle Damage/Roof Leaking into home; The property is habitable; Temporary repairs have not been completed." (Valerie Langhirt Dep., Loss Notice, Doc. 38-5, Pg. ID 672.) The notice also indicated under "Remarks" that Plaintiffs were calling a roofing company the same day and that the roof needed to be tarped. (*Id.* at Pg. ID 673.)

Defendant assigned Kevin Flanigan as the Field Claim Representative for Plaintiffs' windstorm damage claim. (Flanigan Aff., Doc. 25-1, ¶2.) On March 28, 2023, the day after Plaintiffs first contacted Defendant, Flanigan reached out to Plaintiffs about their claim. (*Id.* at ¶5.) He notified them that an independent adjuster from Reliable Adjusting Company Enterprises, Inc. ("Reliable") would perform the inspection of the Subject Property. (*Id.*) On April 3, 2023, Jeffrey Weber from Reliable contacted Mrs. Langhirt about the inspection; he then performed the inspection on April 10, 2023. (*Id.* at ¶¶6-7.) Both Mr. Langhirt and Plaintiffs' contractor were present during the inspection. (*Id.* at ¶7.) Weber took photographs of the Subject Property as part of the inspection. (Flanigan Dep., Doc. 34, Pg. ID 345.) The photographs only depict the exterior of the Subject Property. (*See* Subject Property Photos, Doc. 38-6.)

On April 23, 2023, Weber completed his estimate for the damages to the Subject Property and reported it to Defendant. (Flanigan Aff., Doc. 25-1, ¶8.) The estimate, less the deductible, totaled $20,008.67. (*Id.*) Flanigan then issued a check to Plaintiffs for that amount on April 27, 2023. (*Id.*) He also emailed Plaintiffs explaining the amount on the check and notifying them that an additional $14,893.87 of recoverable depreciation and $2,391.40 for code upgrades were withheld from their payment pending the completion

2

of repairs to the Subject Property. (*Id.*; *see also* 4/27/2023 Email, Doc. 38-8, Pg. ID 733.) Accompanying the check were copies of the Dwelling Repair Claim, which described the recoverable depreciation and code upgrade payments, as well as the estimate from Reliable. (Flanigan Aff., Doc. 25-1; Dwelling Repair Claim, Doc. 38-9; Estimate, Doc. 38-11.) The Reliable estimate included line items describing the necessary roof repairs, but it lacked any description of repairs to the interior of the Subject Property. (Estimate, Doc. 38-11.)

Plaintiffs did not contact Flanigan again until June 6, 2023, when Mrs. Langhirt requested a copy of the claim documents. (Flanigan Aff., Doc. 25-1, Pg. ID 293.) In response to this request, Flanigan re-sent Plaintiffs the estimate from Reliable, along with an explanation of the estimate amounts. (*Id.*; Flanigan Dep., Doc. 34, Pg. ID 348, 352.)

## PROCEDURAL POSTURE

On June 23, 2023, Plaintiff Valerie Langhirt brought this action in Union County Common Pleas Court. (Compl., Doc. 3.) The Complaint alleged breach of contract and bad faith against Defendant Auto-Owners (Mutual) Insurance Company ("Auto-Owners"). (*Id.*) On July 17, 2023, Defendant removed this action to this Court based on diversity jurisdiction. (*See* Notice of Removal, Doc. 1.) On November 30, 2023, Plaintiffs filed their First Amended Complaint, adding Plaintiff Alan Langhirt as a party. (*See* Am. Compl., Doc. 17.) On March 13, 2024, Defendant moved for partial summary judgment on Plaintiffs' bad-faith claim (*See* Motion, Doc. 25).

3

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Plaintiffs bring a bad-faith claim under Ohio law for Defendant's handling of their storm damage claim. When processing insurance claims, an insurer breaches its duty to act in good faith when it refuses to pay a claim "without reasonable justification" in either

4

law or fact. *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994). For such a claim to withstand a motion for summary judgment, the non-moving party must present evidence that tends to show the insurer had no reasonable justification for refusing the claim. *Smith v. Allstate Indem. Co.*, 304 Fed. App'x 430, 432 (6th Cir. 2008). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, the claim was fairly debatable, and refusal was premised on either the status of the law at the time of denial or facts that gave rise to the claim. *Id.* Viewing the facts in a light most favorable to Plaintiffs, Defendant did not act in bad faith as its claim was reasonably justified; without any genuine dispute over whether Defendant acted in bad faith, summary judgment for Defendant on the bad-faith claim is proper.

### I. Defendant Did Not Act in Bad Faith

Bad-faith handling of an insurance claim exists "only if the record shows that there were no circumstances that created a reasonable justification for the insurer's actions." *Hartman v. Conesco Senior Health Ins. Co.*, No. 3:08-CV-099, 2010 WL 1981014, at *8 (S.D. Ohio May 18, 2010) (citing *TOL Aviation, Inc. v. Intercargo Ins. Co.*, Nos. L-05-1308 and L-06-1050, 2006 WL 3334556, at *11 (Ohio Ct. App. Nov. 17, 2006)). Courts examine bad-faith claims by analyzing whether the claim was fairly debatable and the refusal was premised on either the status of the law at the time of denial or the facts that gave rise to the claim. *Werner v. Progressive Preferred Ins. Co.*, 310 F. App'x 766, 769 (6th Cir. 2009); *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 798 N.E.2d 1109, 1115 (Ohio Ct. App. Sept. 30, 2003).

In its Motion for Summary Judgment, Defendant refutes Plaintiffs' claim that it acted in an "arbitrary and capricious" manner and instead argues that it was reasonably justified in how it paid Plaintiffs' policy claim. (Motion, Doc. 25, Pg. ID 288; Compl., Doc. 3, ¶ 22.) Defendant acknowledges that it relied on the initial estimate from Reliable, the independent adjuster, and that it made its timely payment to Plaintiffs in accordance with this estimate. (Motion, Doc. 25, Pg. ID 288.) Indeed, Plaintiffs admit that Defendant issued the check only about a month after Plaintiffs' initial contact regarding the claim. (Response to Defendant's Proposed Undisputed Facts, Doc. 37-1, Pg. ID 554.) This shows that Defendant did not engage in "foot-dragging" in the claims-handling or evaluation process, but expeditiously assessed and paid the claim. *See, e.g., Drouard v. United Servs. Auto. Ass'n*, No. L-06-1275, 2007 WL 707532, at *2 (Ohio Ct. App. Mar. 9, 2007) (stating that the insurer's foot-dragging on claims could support a bad-faith cause of action). This timeframe therefore supports a finding that Defendant acted in good faith.

Beyond its timely claims-handling, Defendant also points to its reliance on Weber's estimate as evidence of its good faith efforts. (Motion, Doc. 25, Pg. ID 288.) Defendant emphasizes that Plaintiffs received the same estimate information used to issue payment on the claim and cannot dispute that they were paid accordingly. (*Id.*) Further, Defendant is correct in pointing out that Plaintiffs have yet to provide relevant evidence explaining why Defendant's reliance on the estimate was not reasonably justified. Plaintiffs presented a statement of their contractor, Dan Petty, who argues that no contractor would perform the work on the estimate because it was insufficient. (Response, Doc. 37, Pg. ID 549; Petty Decl., Doc. 36.) Yet, Petty is not an expert on

6

insurance claims processing or investigation; he cannot speak to whether Defendant's acts, as an insurer, were reasonably justified. His testimony may help determine whether the value of the claim is reasonable, but it is irrelevant as to whether the actions of Defendant are capricious or arbitrary—the question before the Court.

On the contrary, Flanigan testified that he relied on the report from the adjuster in issuing the claim check and that "a lot of storm claims" go to independent adjusters. (Flanigan Dep., Doc. 34, Pg. ID 334.) And, courts have found it reasonable for insurers to rely on an independent adjuster's report. *See, e.g., Corbo Properties, Ltd. v. Seneca Ins. Co., Inc.*, 771 F. Supp. 2d 877, 881-82 (N.D. Ohio 2011) (finding that the defendant-insurer had reasonable justification in denying a claim based on the findings of independent investigators). Plaintiffs also attended Weber's investigation. (Flanigan Aff., Doc. 25-1, ¶7.) They received the estimate and final repair claim. (*Id.*) During the investigation, they did not question why Weber did not photograph the alleged interior damage, nor did they follow up with Flanigan as to why the estimate did not include payment for interior damage. Flanigan had no reason to believe that the estimate he received from Reliance was incorrect or incomplete. Therefore, Defendant's reliance on the independent adjuster's report was reasonable, not arbitrary or capricious. Again, this supports a finding of no genuine issue of material fact as to Defendant's bad faith in handling the claim.

Plaintiffs next point to the discrepancy between the initial loss claim and the estimate, asserting that Flanigan should have noticed and reconciled the discrepancy. (Response, Doc. 35, Pg. ID 547-48.) Indeed, their initial loss claim states that the roof was

7

"leaking into [their] home." (Insurance Claim, Doc. 38-5, Pg. ID 672.) Yet, the photographs taken during the investigation and the dwelling repair claim do not indicate interior damage. (*See* Subject Property Photos, Doc. 38-6; Dwelling Repair Claim, Doc. 38-9.) Plaintiffs argue that this absence reveals Defendant's bad-faith efforts to investigate their claim. (Response, Doc. 35, Pg. ID 547-48.)

But, as mentioned, Plaintiffs attended Weber's investigation and received his estimate. (Flanigan Aff., Doc. 25-1, ¶7.) There is no evidence that they pointed out the alleged interior damage to Weber during the investigation. Plaintiffs argue that Defendant had the burden to contact Plaintiffs about discrepancies in the claim and estimate, ridding themselves of any responsibility to assist in the claim investigation. (Response, Doc. 37, Pg. ID 548). But, Plaintiffs did have responsibility for their claim. In their policy with Defendant, the General Policy Conditions specifically state that, in the case of a loss, the insured must "cooperate with [the insurer] and assist [the insurer] in any matter relating to a claim." (Policy, Doc. 38-7, Pg. ID 719-20.) Yet, Plaintiffs did not question Weber's methods or otherwise follow up with Defendant about the investigation and estimate. (Flanigan Aff., Doc. 25-1, ¶9.) They never notified Flanigan or Weber that the investigation was insufficient. (*Id.*) They did not attempt to address what they believed to be an unreasonable claim payment, until, that is, they commenced this cause of action. Plaintiffs indeed had their own obligation to assist Defendant with claims-handling and failed to do so. They cannot claim Defendant unreasonably failed to correct the claim discrepancy when they made no effort themselves to correct the alleged error during the entire claim process.

Plaintiffs have not shown how Defendant's actions were unreasonably justified. Flanigan reasonably relied on the facts presented to him in the estimate and timely paid out the claim. The question is not whether the denial of the claim (or, as in this case, alleged underpayment) was correct, but whether the insurer's action on the claim was "arbitrary and capricious." *Corbo Properties, Ltd.*, 771 F. Supp. 2d at 882 (citing *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992) (quotations omitted)). Without evidence that Defendant acted capriciously and arbitrarily, there is no genuine issue of material fact as to Plaintiffs' bad-faith claim.

## II. Damages from Plaintiffs' Bad-Faith Claim

In its Reply, Defendant brings forth additional grounds for summary judgment on Plaintiffs' bad-faith claim. (Reply, Doc. 39, Pg. ID 817-19.) The argument relies on a recent decision from this Court which granted an insurer-defendant summary judgment on a bad-faith claim because the plaintiff could not prove compensatory damages stemming from the alleged bad faith. (*Id.; see also Nantucket Landing South Condominium Assoc., Inc. v. State Farm Fire and Casualty Co.*, No. 3:23-CV-161, 2024 WL 3327740 (S.D. Ohio July 8, 2024).) Plaintiffs filed a sur-reply to Defendant's newly-raised argument after the Court granted leave to do so. (Sur-Reply, Doc. 41.) But, as the Court has already established that no genuine issue of material fact exists for Plaintiffs' bad-faith claim, there is no need to address the question of damages. Defendant is entitled to summary judgment on the bad-faith claim.

## CONCLUSION

Based on the foregoing reasons, the Court **ORDERS** the following:

1. Defendant's Motion for Partial Summary Judgment (Doc. 25) is **GRANTED**;

2. Summary Judgment is **ENTERED** in favor of Defendant on Plaintiffs' bad-faith claim; and

3. Plaintiffs' breach of contract claim **SHALL PROCEED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _/s/ Matthew W. McFarland_
JUDGE MATTHEW W. McFARLAND